## IN THE COURT OF APPEALS OF IOWA

No. 22-2102
Filed March 29, 2023

IN THE INTEREST OF A.S. and A.S.,
Minor Children,

C.C., Mother,
        Appellant.
_____

Appeal from the Iowa District Court for Linn County, Carrie K. Bryner, District Associate Judge.

A mother appeals the termination of her parental rights to her two children. **AFFIRMED.**

Eric S. Mail of Puryear Law P.C., Davenport, for appellant mother.

Brenna Bird, Attorney General, and Diane Murphy Smith, Assistant Attorney General, for appellee State.

Dana A. Judas of Nazette, Marner, Nathanson & Shea, LLP, Cedar Rapids, attorney and guardian ad litem for minor children.

Considered by Bower, C.J., and Badding and Buller, JJ.

**BADDING, Judge.**

A mother in the throes of her bipolar disorder appeals the termination of her parental rights to her two children, born in 2014 and 2018, under Iowa Code section 232.116(1)(e) and (f) (2022). The mother claims that if she is given more time, she can "overcome the[] hurdles" that led to her children's removal from her care in May 2021 "to reach a point where the children could be returned to her custody." As a result, she contends it "was error for the trial court to conclude that the grounds for termination existed." Our review is de novo. *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022).

Unpacking the mother's claim, it is evident that she concedes the children could not have been returned to her care at the time of the termination hearing. *See* Iowa Code § 232.116(1)(f)(4) (requiring "clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102"); *see also In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting the statutory language "at the present time" to mean "at the time of the termination hearing"). And for good reason. The mother, who described herself as a vagabond, did not have a home or job when the termination hearing was held. She was also resistant to any treatment for her substance-abuse issues or her mental health.

Both children were born with marijuana in their system. And when they were removed from the mother's care and placed into their father's, they both tested positive for ingestion of marijuana. The mother's marijuana use has persisted throughout the case. All her drug tests were positive for marijuana, with several exceeding the maximum testing level. Though she was ordered to obtain

a substance-abuse evaluation in August when the children were adjudicated in need of the court's assistance, she did not comply with that directive until May 2022, shortly before the first day of the termination hearing in June. That evaluation diagnosed her with a "severe marijuana use disorder due to her chronic and heavy use of marijuana" and recommended treatment, which she did not pursue. *See In re O.N.*, No. 17-0918, 2017 WL 3525324, at *3 (Iowa Ct. App. Aug. 16, 2017) (affirming termination of parental rights of parent who had not resolved her issues with substance abuse).

The mother blamed her marijuana use on her post-traumatic stress disorder and anxiety, which she said were worsened by the court's involvement. But the mother took no steps to address her mental health until more than one year after the children were removed. She testified that she was diagnosed with bipolar disorder when she was twelve years old and hospitalized for a time. The mother stopped taking medication to treat that illness when she turned eighteen. When asked whether her mental health impacted her ability to care for the children, the mother responded: "The disability with bipolar actually makes me a more exciting parent, more fun, more involved." The evidence showed the opposite.

The mother placed the oldest child in her parents' guardianship in 2017. At trial, she claimed that was to keep the father from obtaining custody of her: "[H]e can't take something from me that I don't have."[1] But the order opening the

---

[1] The father petitioned the district court for custody of the children in June 2019. He did not learn about the guardianship until that November, which he later successfully terminated. After concurrent jurisdiction was granted by the juvenile court, the district court placed the children in the father's physical care in June 2021.

guardianship stated the mother could not care for the child. When the youngest child was born in 2018, the mother spent several days in the psychiatric inpatient ward because she was in a "full intensity [m]anic episode" and refusing any medications. The consulting psychiatrist observed the mother did not "have insight for the need for treatment and her judgment is impaired to make decisions for her treatment."

The mother's lack of insight continued after that court committal. A child protective worker with the Iowa Department of Health and Human Services testified that fourteen assessments were completed on the family, with another twenty-four reports rejected for assessment. The worker testified that most of the assessments were "spurious," often involving complaints about normal childhood bruises or scratches the youngest child got in the father's care. These investigations, according to the worker, were invasive and traumatic for the children. Yet reports of child abuse continued to be made against the father right up until the afternoon before the last day of the termination hearing in July 2022.

The evidence suggested the mother made many of these reports to try to get the children removed from the father. Her crusade against the father escalated so much that she posted videos of the children on her YouTube page, accompanied by commentary bashing the father and his girlfriend. Her vitriol extended to all of the professionals involved in the case, with websites dedicated to attacking the father's attorney and the children's guardian ad litem, along with posts on social media claiming the child protective worker disseminated child pornography and a department supervisor "had possible alcohol delirium." The mother would send relentless text messages and emails to everyone in the case,

personally attacking the professionals trying to help her. *See In re J.M.A.*, No. 09-1228, 2009 WL 3380063, at *1–2 (Iowa Ct. App. Oct. 21, 2009) (considering the father's hostility and threats to the department's staff in finding additional time was not warranted).

This conduct, which spilled over to the mother's supervised visitation with the children, led the juvenile court to suspend in-person visitation in September 2021 and enter a detailed communication plan for the mother. From then until February 2022, the mother only had video visits with the children. But when she continued to send emails in violation of the plan, the court suspended even those video visits, which did not resume until shortly before the termination hearing. *See In re M.W.*, 876 N.W.2d 212, 223–24 (Iowa 2016) (finding that the failure "to progress to either semi-supervised or unsupervised" visits supported termination).

The department's caseworker testified the mother's poor mental health "rubs off on the children," making them feel anxious and unstable. When asked whether the mother's mental health had improved over the course of the case, the caseworker testified "it, honestly, has gotten worse." The juvenile court noted the same in its termination ruling, observing the mother's testimony was rambling, delusional, and paranoid.

While the mother made some half-hearted efforts to address these issues at the end of the case, that "is insufficient to preclude the termination of parental rights." *In re K.G.*, No. 17-0347, 2017 WL 2189768, at *3 (Iowa Ct. App. May 17, 2017). In order to grant her more time, we would have to find that "the need for removal 'will no longer exist at the end of the additional six-month period.'" *In re W.T.*, 967 N.W.2d 315, 323 (Iowa 2021) (quoting Iowa Code § 232.104(2)(b)).

The record is clear that would not be the case given the mother's unabated substance use and untreated bipolar disorder, which continued to impact her children's well-being. *See In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998) ("[A] good prediction of the future conduct of a parent is to look at the past conduct."). "Children should not be forced to wait for their parent to be able to care for them," especially when we have no reason to believe that circumstances will be different in six months. *In re M.M.*, No. 15-0214, 2015 WL 1332330, at *2 (Iowa Ct. App. Mar. 25, 2015).

We find the evidence sufficient to support termination under section 232.116(1)(f) and conclude an extension of time is unwarranted. As a result, we affirm the termination of the mother's parental rights.

**AFFIRMED.**